**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | |
|---|---|
| Mary M.,<br><br>*Plaintiff*,<br><br>*v.*<br><br>Frank J. Bisignano,<br>Commissioner of Social Security,<br><br>*Defendant*. | Case No. 3:25-cv-50204<br><br>Honorable Michael F. Iasparro |

## MEMORANDUM OPINION AND ORDER

Plaintiff Mary M. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

Plaintiff protectively filed an application for disability insurance benefits on May 26, 2021, alleging a disability onset date of March 25, 2021. R. 69, 172. Following a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on April 2, 2024, finding that Plaintiff is not disabled. R. 17-32. The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work but may only "occasionally climb ladders, ropes, scaffolds, ramps or stairs; frequently balance; occasionally stoop, kneel, crouch or crawl; and avoid concentrated exposure to vibration and hazards such as dangerous moving machinery and unprotected heights." R. 23 (citation modified). The ALJ found that Plaintiff can perform past relevant work as a waitress. R. 31.

The Appeals Council denied Plaintiff's request for review on February 26, 2025, making the ALJ's decision the final decision of the Commissioner. R. 1-6; 20 C.F.R. § 416.1481. Plaintiff then filed this action seeking judicial review. Dkt. 1.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 6.

inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

## DISCUSSION

Plaintiff challenges the Commissioner's decision based on the ALJ's alleged violation of Social Security Ruling ("SSR") 96-8p in the RFC evaluation and the ALJ's alleged violation of SSR 16-3p in the subjective symptom analysis. Dkt. 13. As explained in further detail below, the Court does not find that either of these alleged errors warrant remand.

1) RFC Evaluation

Plaintiff first argues that the ALJ violated SSR 96-8p in the RFC evaluation by relying on the opinions of the state agency consultants despite those opinions being "significantly outdated" because the consultants only reviewed evidence through March 2023. Dkt. 13, at 5. However, Plaintiff has not shown that any new evidence that was not reviewed by the state agency consultants "changed the picture so much that the ALJ was required to seek an updated opinion to account for it." *Baptist v. Kijakazi*, 74 F.4th 437, 443 (7th Cir. 2023).

"It is well-established that ALJs may not rely on a state agency consultant's assessment if later evidence 'reasonably could have changed' the opinion." *Baptist*, 74 F.4th at 442 (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). But "older assessments can still constitute 'substantial evidence' supporting the ALJ's decision where the new [evidence] do[es] not necessarily undermine previous medical conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1067 (7th Cir. 2023) (internal quotation marks and citation omitted). Thus, "the critical question is whether the new evidence contains 'significant and new developments' that 'reasonably' could have changed the previous reviewing consultant's assessment." *Baptist*, 74 F.4th at 443.

Plaintiff specifically points to a May 2023 MRI, an October 2023 EMG study, and a January 2024 MRI, as evidence that "*could* be considered a 'game changer' [showing] chronic bilateral L4 and/or L5 radiculopathy and a differential diagnosis of S1 radiculopathy." Dkt. 13, at 6 (emphasis added). But the state agency consultants were aware of Plaintiff's back and hip issues, which they accounted for with postural limitations. R. 73, 83. This new imaging, as it was interpreted by Dr. Durrant, corroborates Plaintiff's complaints of back and hip pain but "do[es]

not reveal a worsening of her condition such that resubmission to a medical expert was required." *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022). Thus, the ALJ could still reasonably rely on the state agency consultants' opinions.

Plaintiff also complains that "[t]here was no explanation why [obesity] would not further" limit Plaintiff. Dkt. 13, at 7. But the ALJ did consider the limitations caused by Plaintiff's impairments "in combination with obesity" when he formulated the RFC. R. 29; *see also* R. 22 ("The claimant's obesity does not meet or equal the criteria for any listed impairments, because there is no evidence that it significantly impairs her exertional function and non-exertional functions."); R. 23 ("Additionally, there is no evidence that the claimant's obesity has caused significant impairments related to claimant's other functions, such as cardiovascular, respiratory, or digestive, that causes reoccurring, persistent, and uncontrollable effects on these functions (SSR 19-2p)."). More importantly, it is not the ALJ's burden to prove that Plaintiff's obesity does not cause limitations; it is Plaintiff's burden to show that it does. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) ("It was Summer's burden, not the ALJ's, to prove that she was disabled."); *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015) ("[A]n ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how her obesity hampers her ability to work." (citation omitted)). She has not done so.

Plaintiff also challenges the ALJ's weighing of the evidence related to her Complex Regional Pain Syndrome (CRPS). Dkt. 13, 9-10. As Plaintiff recognizes, the ALJ "acknowledg[ed] a limping and abnormal gait pattern." *Id.* at 8 (citing R. 27). The ALJ was simply persuaded by the fact that the record largely "showed normal gait, strength, tone, (some atrophy), no tics, normal motor coordination, some reduced hip range of motion, but negative straight leg raising." R. 30. This evidence led the ALJ to conclude that "the record has not demonstrated significant impairment in mobility of the affected region with a diagnosis of CRPS" despite "exams [that] have at times shown swelling and abnormal hair growth in the area of the CRPS injury." R. 23. Plaintiff may not agree with the significance the ALJ assigned to these mixed findings, but she "cannot prevail by arguing that the ALJ improperly weighed the evidence." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020).

Moreover, much of the evidence related to CRPS that Plaintiff points to as evidence that the ALJ did not confront was in fact cited and considered by the ALJ. Plaintiff points to "abnormal notations such as positive straight leg raise, positive FABER testing, extremity weakness, reduced sensation, limited range of motion and tenderness/trigger points" as examples of evidence that "[t]he ALJ was required to confront." Dkt. 13, at 9. But the ALJ recognized many of these findings. *See e.g.*, R. 27 (diminished sensation in the lower extremities at the May 2022 consultative exam), 28 (tenderness in left knee and hip, positive straight leg test and Faber test, and lumbar paraspinal trigger points at the October 2023 pain management appointment), 29 (limited left hip rotation at the October 2023 chiropractor neurology appointment). Thus, there was no "line of evidence" that was ignored by the ALJ and ultimately, this is not a case in which the ALJ "presented a 'skewed version of the evidence,' or failed to 'minimally discuss' contrary evidence." *Thorlton*, 127 F.4th at 1082 (citations omitted).

Plaintiff similarly takes issue with the ALJ's weighing of the evidence related to her mental impairments, arguing that the ALJ demonstrated "a one sided view of the evidence." Dkt. 13, at

10. Plaintiff specifically points to her "consistent diagnoses[2] of panic, anxiety and major depressive disorders" as well as her "consistent complaints of sleep alteration, loss of interest in pleasurable activities, feelings of guilt/worthlessness/hopelessness, problems with energy, problems with concentration, [and] appetite disturbance." *Id.* But the ALJ found that Plaintiff's mental impairments were non-severe because "the evidence of record show[s] essentially normal mental status exams." R. 22. While Plaintiff has pointed to some evidence that was not specifically mentioned by the ALJ in making this determination, she has failed to show that the evidence "compels a contrary result." *Thorlton*, 127 F.4th at 1081 (quoting *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021)).

Plaintiff continues by arguing that, even assuming no error in the ALJ's conclusion that Plaintiff's mental impairments are non-severe, "the ALJ was still required to consider non-severe impairments in assessing his RFC." Dkt. 13, at 11. While true, the Court finds no error as the ALJ did exactly that. The ALJ explained that Plaintiff's mental limitations are not only non-severe but also do not show "any mental limitations" even when considered "in combination with each other, and in combination with the other impairments and symptoms." R. 22. This is further supported by the opinions of the state agency consultants who also found that Plaintiff's mental impairments "do not cause any significant functional impairment, and are non-severe." R. 72, 81; *see also Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is she offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set."). This demonstrates adequate consideration by the ALJ. And regardless, Plaintiff provides no indication as to why she believes her mental impairments prevent her from performing work consistent with the RFC. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Remand is not warranted based on the ALJ's RFC evaluation.

2) Subjective Symptom Analysis

Plaintiff next argues that the ALJ violated SSR 16-3p in the subjective symptom analysis by failing to provide a sufficient explanation for his analysis. Dkt. 13, at 11-14. The ALJ's subjective symptom analysis must be allowed to stand so long as "the ALJ said enough [] to support [his] decision and permit meaningful review." *Thorlton*, 127 F.4th at 1083. The ALJ did that here.

Plaintiff points to portions of her testimony that the ALJ did not discuss in his analysis and correctly explains that "[s]tatements about pain cannot be disregarded simply because it was not corroborated by objective evidence." Dkt. 13, at 13 (citing *Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015)). But Plaintiff has not shown any error requiring remand. The ALJ considered substantial relevant portions of Plaintiff's testimony and, despite Plaintiff's contention to the contrary, the ALJ specifically recognized that Plaintiff "has been using a shower chair for a year and a half," she "takes her time" doing household chores, and "her sons do some chores as well." R. 24-25. The ALJ's decision to weigh Plaintiff's testimony differently than Plaintiff would like, or even to omit discussion of some portions of Plaintiff's testimony, is not adequate to show "that the decision lacks any explanation or support." *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir.

[2] Note that diagnoses alone are not sufficient to show the existence of any symptoms or functional limitations. *See Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("Conditions must not be confused with disabilities.").

2025) (citation omitted); *see also Thorlton*, 127 F.4th at 1081 (the ALJ is "under no obligation to 'discuss every piece of evidence in the record'" (citation omitted)). And the ALJ did not dismiss any symptoms simply based on a lack of objective evidence. Rather, the ALJ considered the relevant factors (such as Plaintiff's daily activities, her own inconsistent reporting, *and* objective medical evidence) to reach his conclusion that "the weight of the evidence cuts against [Plaintiff's] subjective complaints." R. 30.

Finally, Plaintiff argues that her alleged need to nap was dismissed by the ALJ without adequate consideration. Dkt. 13, at 12. The ALJ acknowledged Plaintiff's allegation that "she naps a lot" but also recognized that this symptom was "not in the record." R. 30. Plaintiff does not point to any evidence that shows she alleged this need to nap often (to her treating physicians or otherwise) prior to her testimony at the hearing. This complete lack of seeking treatment is a reasonable factor for the ALJ to weigh and in evaluating this paucity of evidence, and thus the ALJ demonstrated adequate consideration of this allegation. *See Lena T. v. Dudek*, No. 22 CV 2986, 2025 WL 843769, at *3 (N.D. Ill. Mar. 17, 2025) ("The ALJ was permitted to consider 'the frequency or extent of the treatment sought' by Lena and whether such treatment was 'comparable with the degree' of the subjective complaints reported." (citation omitted)).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reversal and remand is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Entered: September 3, 2026

By: ______________________________
Michael F. Iasparro
United States Magistrate Judge